IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **REUBEN S. CURB,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    **Case No.:  7:06-CV-2301-RDP** |
| | ) |
| **TRANS UNION, LLC, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM OPINION

**I.  INTRODUCTION**

This case is currently before the court on Defendant Ameriquest Mortgage Company's ("Ameriquest") Motion to Dismiss. (Doc. # 12). The motion has been fully briefed by the parties and came under submission on December 11, 2006. For the reasons outlined below, the court concludes Ameriquest's motion is due to be granted in part and denied in part as it is unable to determine which of Plaintiff's state law claims are preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

**II.  STATEMENT OF FACTS**

Plaintiff Reuben S. Curb ("Plaintiff") alleges he discovered numerous errors on his credit reports with three credit reporting agencies ("CRAs") (which are other defendants in this case) and that Ameriquest furnished that incorrect or false information regarding his account with Ameriquest to one or more of those CRAs. (Doc. # 1 ¶ 11). During January 2005, Plaintiff began disputing these inaccuracies by mail and email correspondence with the CRAs, Ameriquest, various governmental agencies, and the Better Business Bureau of Virginia. (Doc. # 1 ¶ 12). Plaintiff directly notified the CRAs of a dispute concerning the completeness and/or accuracy of his Ameriquest account as reported to the CRAs. (Doc. # 23 ¶ 2). Plaintiff alleges that the CRAs followed the requirements of the FCRA and gave proper and timely notice of these disputes to Ameriquest, or, in the alternative, the CRAs did not properly give notice of the disputes to Ameriquest as

required by the FCRA.[1]  (Doc. # 23 ¶ 3; Doc. # 23 ¶ 3 n. 2).  In any event, Plaintiff claims he has provided Ameriquest with more than sufficient information in his correspondence to cause Ameriquest to consult its own internal sources of information, conduct an investigation, and conclude that the accounts complained of were being reported incorrectly.  (Doc. # 23 ¶ 4).

Plaintiff further contends that Ameriquest acted willfully, intentionally, recklessly, and/or negligently in failing to investigate the allegations contained in these disputes or neglecting to review the information contained in its own files regarding Plaintiff's credit record.  (Doc. # 23 ¶ 5).  As a direct consequence of such failure, Plaintiff alleges that Defendants, including Ameriquest, either failed to delete information found to be inaccurate, neglected to replace the inaccurate information with accurate information, and/or reinserted the inaccurate information into Plaintiff's credit report without following the dictates of the FCRA.  (Doc. # 23 ¶ 5).  Furthermore, Plaintiff alleges that at all relevant times the CRAs failed to maintain and follow reasonable procedures to assure maximum possible accuracy of his credit report, thereby violating 15 U.S.C. § 1681e(b).  (Doc. # 23 ¶ 6).  Plaintiff also claims that Ameriquest failed to properly maintain and follow reasonable procedures to assure the maximum possible accuracy of his credit information and his credit report, thereby violating state law, and that such violations occurred before, during, and after the dispute process began with the CRAs.  (Doc. # 23 ¶ 7).  As a result, Plaintiff asserts that Ameriquest, acting with full knowledge of the consequences of its actions, published false and incorrect statements concerning Plaintiff's account to one or more of the CRAs, and that the CRAs, in turn, published these false statements to third parties who reviewed and/or requested Plaintiff's credit reports.  (Doc. # 23 ¶ 10).  Finally, Plaintiff alleges that all Defendants failed to conduct a proper and lawful reinvestigation by failing and/or refusing to do a proper investigation as required by the FCRA, which led to the erroneous information staying on Plaintiff's

---

[1] Plaintiff states that he is making this alternative allegation because true facts as to the notice provided the furnishers such as Ameriquest are only known to the CRAs, and, prior to discovery, he has no way of confirming any of the notices he claims were required.  (Doc. # 23 ¶ 3 n. 2).

credit reports. (Doc. # 23 ¶ 8).

As to each allegation, Plaintiff alleges that all of Defendants' actions were done with malice, were done willfully, and were done with either: (1) the desire to harm Plaintiff; (2) the knowledge that their actions would very likely harm Plaintiff; (3) the knowledge that their actions were taken in violation of the FCRA and state law; and/or (4) the knowledge (*i.e.*, that Defendants knew or should have known) that their actions were in reckless disregard of the FCRA and state law. (Doc. # 23 ¶ 9). Plaintiff claims to have suffered the following injuries as a consequence of the Defendants' actions: (1) paying higher interest rates; (2) being denied credit lines; (3) monetary loss; (4) damage to past, present, and future creditworthiness; and (5) past, present, and future mental anguish. (Doc. # 1 ¶ 16–17). Plaintiff further claims he is entitled to punitive and statutory damages because "all Defendants have engaged in a pattern and practice of wrongful and unlawful behavior." (Doc. # 1 ¶ 21).

### III. STANDARD OF REVIEW

Defendant has challenged the sufficiency of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). Specifically, Defendant argues that Plaintiff lacks standing under the FCRA to bring suit for any alleged failure by Ameriquest to provide accurate information to the CRAs and that Plaintiff's state law claims are preempted by the Fair Credit Reporting Act. A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of law or of mixed fact and law have long

been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)).  Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original).  Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim.  We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Commc'ns. Corp.*, 274 F. Supp. 2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

IV.  **DISCUSSION**

    A.  **The FCRA Does Not Allow Plaintiff to Bring Suit for Any Alleged Failure by Ameriquest to Provide the CRAs with Accurate Information.**

Plaintiff alleges that Ameriquest violated § 1681e(b) of the FCRA by "fail[ing] to maintain and . . . follow reasonable procedures ensuring the maximum accuracy of his credit reports."  (Doc. # 1 ¶ 28).  However, even a cursory review of § 1681e(b) reveals that it only governs consumer reporting agencies, as defined in § 1681a(f) of the FCRA.[2]  Indeed, § 1681e(b) clearly states: "[w]henever a **consumer reporting**

---

[2] That section states as follows:

> The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose

**agency** prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added).  By Plaintiff's own admission, Ameriquest is not a "consumer reporting agency," but a "furnisher," as defined by § 1681s-2.  (Doc. # 1 ¶¶ 24–25).  Therefore, Ameriquest is not subject to liability under § 1681e(b), and Plaintiff's claim related thereto is plainly due to be dismissed.

The FCRA provision actually governing a furnisher's obligation to provide accurate information is section 1681s-2(a).  However, §§ 1681s-2(c) and (d) explicitly state, and various courts have confirmed, that there is no private right of action against furnishers for violations of § 1681s-2(a) and that such violations can only be enforced by certain federal and state officials. 15 U.S.C. § 1681s-2(c)–(d); *see also Abbett v. Bank of America*, 2006 WL 581193, at *3 (M.D. Ala.)(no private right of action under section 1681s-2(a)); *Riley v. General Motors Acceptance Corp.*, 226 F. Supp. 2d 1316, 1319 (S.D. Ala. 2002)(same); *Yelder v. Credit Bureau of Montgomery, L.L.C.*, 131 F. Supp. 2d 1275, 1283 (M.D. Ala. 2001)(same).  Thus, even if Plaintiff had invoked the proper section of the statute in asserting a FCRA claim against Ameriquest for failing to provide accurate information, the claim would still fail as the statute does not provide for (and the courts have not created) a private right of action.

    **B.**    **Any State Law Claims Accruing After the CRAs Notified Ameriquest of Plaintiff's Dispute with Information Regarding His Ameriquest Account Are Preempted by the FCRA; Those State Law Claims Accruing Before Such Time Survive.**

The critical issue before the court is whether the FCRA preempts Plaintiff's state law claims that relate to Ameriquest's responsibilities as a furnisher of information to CRAs. Two subsections of the FCRA are relevant to this question.  The older subsection, § 1681h(e), provides furnishers of credit information with qualified immunity from "any action or proceeding in the nature of defamation, invasion of privacy, or

---

of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

negligence."[3]  The newer subsection, § 1681t(b)(1),[4] provides furnishers of credit with absolute immunity from state law claims when fulfilling their reporting

---

[3]Section 1681h(e) provides in full:

(e) Limitation of liability

Except as provided in sections 1681n and 1681o, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to *false information furnished with malice or willful intent to injure such consumer*.

15 U.S.C. § 1681h(e) (emphasis added).

[4]15 U.S.C. § 1681t provides in relevant part:

(a) In general

Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, *except to the extent those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.*

(b) General Exceptions

*No requirement or prohibition may be imposed under the law of any State—*

(1) with respect to any subject matter regulated under—

\* \* \*

(F) section 1681s-2 of this title, *relating to the responsibilities of persons who furnish information to consumer reporting agencies*, except that this paragraph shall not apply [to two statutory provisions of California and Massachusetts].

15 U.S.C. § 1681t (emphasis added).

obligations under § 1681s-2.[5]  Section 1681t(b)(1)(F) was added to the FCRA by Congress in a 1996 amendment.  The Honorable James H. Hancock of this court has explained the relationship that exists among these statutes:

> This newer language provides limits on state law liability that are both broader and more narrow than the older § 1681h(e) language.  The newer § 1681t(b)(1)(F) is broader than

---

[5]Ameriquest's statutory duties relating to Plaintiff's claims arise under 15 U.S.C. § 1681s-2:

(b) Duties of furnishers of information upon notice of dispute

(1) In general

After receiving notice [from a CRA] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2.

the older § 1681h(e) in that it preempts all state law claims that may arise from a person's furnishing of credit information to a consumer reporting agency, whereas 1681h(e) only preempts state law claims "in the nature of defamation, invasion of privacy, or negligence" to the extent that such claims do not result from willful or malicious conduct. But the newer § 1681t(b)(1)(F) is also more narrow than the older § 1681h(e) in that the protections of the newer § 1681t(b)(1)(F) are not triggered until after a furnisher is notified by a consumer reporting agency of a consumer's dispute, whereas the older § 1681h(e) protections are available at all times. . . . In other words, the protection of § 1681t(b)(1)(F) is limited by § 1681s-2(b)(1) which sets forth the duties of a furnisher of credit information.

*Wolsterdorf v. Pentagon Fed. Credit Union*, 320 F. Supp. 2d 1222, 1224 (N. D. Ala. 2004). The overlap of these two sections has resulted in disagreement among courts about how best to harmonize the two in application.[6] *E.g., Riley v. Gen. Motors Acceptance Corp.*, 226 F. Supp. 2d 1316, 1324 (S.D. Ala. 2002) (discussing the various approaches to analyzing the two provisions). Courts interpreting the provisions have settled into three main camps—complete preemption, the temporal approach, and the statutory versus common law approach. Defendant urges this court to conclude that there is complete preemption of state law claims, arguing that the newer language (§ 1681t(b)(1)(F)) supercedes the older (§ 1681h(e)) altogether, and thus all state law claims relating to the duties of persons who furnish information to CRAs are preempted by the newer § 1681t(b)(1)(F).[7] *See, e.g., Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1143–44 (N.D.

---

[6]This court notes that among appellate courts only the Fifth Circuit has spoken, albeit indirectly, to the question of the relationship of state law claims to the protections provided furnishers of credit information under the FCRA. *See Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 638–640 (5th Cir. 2002) (giving effect to the qualified protections of the older § 1681h(e) while recognizing the notice required to trigger the duties of § 1681s-2(b)).

[7]The court notes that Defendant alternatively advocates what it terms "a more equitable approach to reconciling the perceived conflict between sections 1681t(b)(1)(F) and 1681h(e)." (Doc. # 13 at 12). Specifically, Defendant argues that "section 1681h(e) only applies when information is disclosed in the following four limited respects: (1) pursuant to Section 1681g; (2) pursuant to 1681h; (3) pursuant to 1681m; and/or (4) by a user of a consumer report to or for a consumer against whom the user has taken adverse action based in whole or part on the report." (Doc. # 13 at 13). Defendant concludes, "[t]hus, if this Court is insistent upon giving effect to both statutes, it should simply do so in the following manner: Apply section 1681h(e) and its limitations in those instances where a furnisher discloses information pursuant to one of the four above categories, and apply section 1681t(b)(1)(F) and its preemptive measures with respect to all other claims involving the responsibilities of furnishers." (Doc. # 13 at 13).

Cal. 2005); *Purcell v. Universal Bank, N.A.*, 2003 WL 1962376, *5 (E.D. Pa. April 28, 2003); *Hasvold v. First USA Bank, N.A.*, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002); *Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356, 361–62 (E.D. Pa. 2001); *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 503 (W.D. Tenn. 1999); *see also Jarrett v. Bank of America*, 421 F. Supp. 2d 1350, 1354 (D. Kan. 2006) (suggesting this result, but expressly declining to reach the issue). Not surprisingly, Plaintiff argues that this court should adopt either the temporal approach or the statutory versus common law approach. After conducting its own review of the statutes and case law, the court finds that the temporal approach is the correct way to interpret all statutory sections involved. Therefore, only those state law claims accruing after Ameriquest was notified by the CRAs of Plaintiff's dispute are preempted by the FCRA. Those state law claims accruing before such time survive.

      **1.**      **Complete Preemption Violates the Well-Established Rules of Statutory Interpretation.**

The courts that have found complete preemption of state law claims by the FCRA have done so by concluding that the 1996 amendment to the FCRA (including § 1681t(b)(1)(F)) superceded the liability

---

Unfortunately for Defendant, its argument relies upon a false assumption—that either § 1681t(b)(1)(F) or § 1681h(e) or both *must cover all* state law claims involving furnishers' disclosure of consumer credit information. However, as more fully discussed below, this is not the case, because under the temporal approach a state law claim against a furnisher could arise prior to a CRA notifying the furnisher of the consumer's dispute (and, therefore, under the temporal approach such claim is not preempted by the FCRA) *and* such claim is not in one of the four categories of claims to which § 1681h(e) preemption (according to Defendant) applies. Such a claim would not be preempted under either section.

As explained below, it is impossible for the court to determine at this time which state law claims are preempted in this case. The pleadings simply allege that Ameriquest violated state law both before and after being notified by a CRA of Plaintiff's dispute, that such actions were done willfully or maliciously, and the more general allegation that Ameriquest "failed to properly maintain and failed to follow reasonable procedures to assure maximum possible accuracy of [Plaintiff's] credit information and his credit report, concerning the accounts in question, thus violating state law." (Doc. # 23). Such allegations, without any further information, are an insufficient basis for a § 1681h(e) preemption analysis, and on this record the court cannot, with particularity, determine those state law claims that are preempted because it cannot ascertain which of those claims arose after Ameriquest had been informed of a dispute by a CRA.

9

limitation provisions that already existed in the statute at § 1681h(e). *See, e.g.*, *Jaramillo*, 155 F. Supp. 2d at 361–62. However, nothing in the 1996 amendment suggests (much less compels) such a conclusion. Furthermore, such an interpretation violates a fundamental principle of statutory construction. In *TRW Inc. v. Andrews*, the Supreme Court stated that "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted)). Effectively, the court agrees with Judge Hancock, and feels that "to imply Congress's intent to repeal a previously existing provision in the statute without a clear statement in the amendment to that effect is an unwieldy act of legislation that this court ought not and will not undertake." *Wolsterdorf*, 320 F. Supp. 2d at 1225–26. Furthermore, the court finds that the plain language of the statutes demonstrate that the two provisions can coexist. *See Branch v. Smith*, 538 U.S. 254, 273 (2003) (holding that where it is possible for the court to do so, it must give equal effect to what, at first blush, appear to be conflicting provisions of a given statute). Finding those decisions advocating complete preemption to be unpersuasive, and since it is possible for the court to do so, both § 1681h(e) and § 1681t(b)(1)(F) must be given equal effect.

        **2.**    **The Common Law Versus Statutory Violation Approach Appears Misguided.**

After concluding that a complete preemption approach is off the mark, some courts have adopted an approach wherein § 1681h(e) applies to all common law torts and § 1681t(b)(1)(F) preempts any state statutory claims not specifically exempted by that statute, which is known as the "common law versus statutory" approach. *See, e.g., Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418 (E.D. Pa. 2006); *Islam v. Option One Mortgage Co.*, 432 F. Supp. 2d 181 (D. Mass. 2006); *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368 (N.D. Ga. 2004); *McCloud v. Homeside Lending*, 309 F. Supp. 2d 1335 (N.D. Ala. 2004); *Jeffery v. Trans Union, LLC*, 273 F. Supp. 2d 725 (E.D. Va. 2003); *Gordon v. Greenpoint Credit*, 266 F. Supp. 2d

1007 (S.D. Iowa 2003); *Carlson v. Trans Union, LLC*, 259 F. Supp. 2d 517 (N.D. Tex. 2003). The courts adopting this approach first look to the language of § 1681h(e), which specifically references "any action or proceeding in the nature of defamation, invasion of privacy, or negligence." 15 U.S.C. § 1681h(e). As the specified causes of action comprise a non-exclusive list of torts that might arise from false or inaccurate credit reports, § 1681h(e) is deemed by these courts to apply to any state-law causes of action that may be classified as "torts." These courts conclude that § 1681t(b)(1)(F) appears to deal only with state statutory regulation of credit reporting, and base this conclusion on the mention of the two state statutory schemes specifically excluded from the ambit of § 1681t(b)(1)(F), *i.e.*, section 54A(a) of Chapter 98 of the Massachusetts Annotated Laws, and section 1785.25(a) of the California Civil Code. Because these two state statutes address inaccurate or incomplete information in a credit report, these courts reason that Congress must have intended the federal statute (§ 1681t(b)(1)(F)) to preempt *only* those state statutes specifically addressing inaccurate information in consumer credit reports. *See McCloud*, 309 F. Supp. 2d at 1341. Thus, under this approach, § 1681h(e) applies only to torts, while § 1681t(b)(1)(F) applies only to state statutory regulation of credit reporting practices and procedures. *See Carlson*, 259 F. Supp. 2d at 521.

      The court finds this approach misguided. A statute's reference to other state statutory schemes, without more, cannot conclusively establish that Congress intended a statute to preempt only state statutory claims. Furthermore, there is nothing in the plain language of § 1681t(b)(1)(F) to suggest it only prohibits causes of action that have been codified, and there is nothing in the legislative history to suggest this limitation. Similarly, there is nothing in § 1681h(e) to indicate that it was meant to apply only to state common law claims. 15 U.S.C. § 1681h(e). On the contrary, § 1681h(e) specifically exempts federal claims brought under FCRA §§ 1681n and 1681o. Why would there be any need for Congress to carve out claims brought under a federal statute if the provision was meant to apply only to state common law claims? Of course, the answer must be that Congress certainly did not intend that the remainder of the section apply only to state common

law claims. As such, the court finds that the "statutory versus common law" approach is not the best way to harmonize the two provisions and should be rejected.

### 3. This Court Adopts the Temporal Approach.

Other courts have held that the newer § 1681t(b)(1)(F) preemption provision is more limited in scope. Looking to the plain language of the statute, these courts hold that it only preempts those state law claims arising after the furnisher has received notice of a dispute from a CRA, which triggers a furnisher's FCRA duties under § 1681s-2.[8] *See, e.g.*, *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776 (W.D. Ky. 2003); *Aklagi v. NationsCredit Fin. Serv. Corp.*, 196 F. Supp. 2d 1186, 1194-95 (D. Kan. 2002); *see also Riley*, 226 F. Supp. 2d at 1324.

Such a conclusion necessitates an examination of the complexity of the statute, and the statute's complexity is magnified by a number of moving parts. Specifically, § 1681t(b)(1)(F) refers to the duties imposed by § 1681s-2, which are the duties of those entities that furnish consumer credit information to CRAs. While § 1681s-2(a) deals with the duty of furnishers to provide accurate information, only certain state and government officials can enforce this provision. 15 U.S.C. § 1681s-2(c)–(d). However, the duties of furnishers upon receiving notice of a consumer's dispute with his credit information (including an investigation and review), which are at issue in this case and provide a private right of action under the FCRA, are triggered by events described in § 1681i(2). Simply put, under the newer provision all state law claims are preempted (*see* § 1681t(b)(1)(F)) when they involve conduct related to the reporting of information to a CRA (*see* § 1681s-2(b)) only after the person has been notified of a dispute by a CRA (*see* § 1681i(2)). That

---

[8] Specifically, the triggering provision of the statute states that private enforceable duties of furnishers do not arise until "[a]fter [the furnisher] receives notice [from a CRA] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1) (emphasis added); *see also* 15 U.S.C. § 1681i(a)(2) (identifying consumer reporting agencies as the only party from whom the furnisher must receive notice of the dispute).

the duties giving rise to claims that may be subject to preemption (under § 1681s-2) must first be triggered before preemption can occur is a logical conclusion—duties, which are the bases for claims, must come first before preemption of claims based on those same duties.

As noted above, both § 1681t(b)(1)(F) and § 1681h(e) limit liability arising out of the reporting of credit information. 15 U.S.C. §§ 1681h(e), 1681t(b)(1)(F); *see also* 15 U.S.C. § 1681s-2. But, the absolute bar of the newer § 1681t(b)(1)(F) applies only after a consumer reporting agency notifies the furnisher of credit information of a consumer dispute. *See* 15 U.S.C. § 1681s-2(b)(1); *see also* 15 U.S.C. § 1681i(a)(2). However, the more limited liability restrictions of the older § 1681h(e) continue to apply both before and after a consumer reporting agency notifies a furnisher of information about a consumer dispute. 15 U.S.C. § 1681h(e).

After reviewing the pleadings, the court is unable to determine which (if any) level of FCRA immunity applies to Ameriquest's conduct. Plaintiff alleges that such claims arose both before and after Ameriquest received notice of Plaintiff's dispute from a CRA and, further, Plaintiff alleges that all of Ameriquest's actions were done "with malice or wilful intent to injure Plaintiff." 15 U.S.C. § 1681(h)e (*see also* Doc. # 23 ¶ 9). However, undoubtedly due to the comfort of notice pleading, Plaintiff's complaint does not point to any specific violations and/or particularlized occurrences. Moreover, the parties have not conducted discovery and, therefore, the record cannot be expected to reveal that type of information. At the very least, the court finds that Plaintiff has met his minimal burden on this motion to dismiss. But ultimately Plaintiff's state law claims against Ameriquest that arose after it was notified by a CRA of a dispute are preempted by the FCRA and those state law claims accruing before Ameriquest received a verification of Plaintiff's dispute from a CRA will survive, as long as Plaintiff can show that Ameriquest acted with the "malice or wilful intent to injure" required by § 1681h(e).

## V.  CONCLUSION

For the foregoing reasons, the court concludes Ameriquest's Motion to Dismiss (Doc. # 12) is due to be granted in part, as Plaintiff does not have standing under the FCRA to bring suit for any alleged failure by Ameriquest to provide accurate information.  Plaintiff's state law claims against Ameriquest that arose **after** it was notified by a credit reporting agency of Plaintiff's dispute are preempted by the FCRA, 15 U.S.C. § 1681 *et seq*.  However, those state law claims accruing **before** Ameriquest received a verification of Plaintiff's dispute with information reported regarding his Ameriquest account from a credit reporting agency will survive, as long as Plaintiff can show that Ameriquest acted with the "malice or wilful intent to injure" required by § 1681h(e).  The court will enter a separate order in accordance with this opinion.[9]

**DONE** and **ORDERED** this ___1st___ day of March, 2007.

                                                     **R. DAVID PROCTOR**
                                                   UNITED STATES DISTRICT JUDGE

---

[9]The court notes that another claim remaining against Ameriquest is Plaintiff's allegation that it failed to conduct a proper and lawful reinvestigation under the FCRA, 15 U.S.C. § 1681s-2(b)(1).  Defendant Ameriquest originally sought dismissal of this claim in its Motion to Dismiss (Doc. # 12) on the grounds that it failed to state a claim for which relief could be granted under Federal Rule of Civil Procedure 12(b)(6).  However, upon close scrutiny of this argument, the court found that Ameriquest was seeking to dismiss this claim because of a defect in the pleadings.  Specifically, Ameriquest argued that Plaintiff failed to allege that Ameriquest had received notice of Plaintiff's disputes concerning the accuracy of his credit report from the CRAs, which is necessary to trigger the duty to investigate or reinvestigate.  15 U.S.C. § 1681i(a)(2); 15 U.S.C. § 1681s-2(b)(1).  The court allowed Plaintiff to amend his complaint by order dated December 7, 2006, and Plaintiff did so that same day.  (Doc. # 23 Ex. A).  Having cured the defect in his original pleading of a violation under § 1681s-2(b)(1), this claim will survive Ameriquest's original motion to dismiss.  Plaintiff's other FCRA claim regarding Ameriquest's failure to provide accurate information to the CRAs, brought under 15 U.S.C. § 1681s-2(a), fails as a matter of law and will be dismissed, as discussed in Part IV.A above.